UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MILTON HEMANS,

                Petitioner,

     v.                                 18-CV-1154
                                          DECISION AND ORDER
JEFFREY SEARLS, Field Office Director
Buffalo Federal Detention Facility,

                Respondent.
_____


       Milton Hemans is a citizen of Jamaica who has been detained for more than two

years and three months while he awaits judicial review of his final order of removal.  On

October 19, 2018, Hemans filed a *pro se* petition for a writ of habeas corpus under 28

U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention

Facility in Batavia, New York.  Docket Item 1.  On February 4, 2019, the respondents

answered, Docket Item 9, and on February 21, 2019, Hemans replied, Docket item 10.

       For the reasons that follow, this Court conditionally grants Hemans's petition.


## FACTUAL AND PROCEDURAL BACKGROUND


       The following facts, taken from the record, come largely from filings with the

United States Department of Homeland Security, Immigration and Customs

Enforcement ("DHS").  Hemans is a 55-year-old man who is a native and citizen of

Jamaica.  Docket Item 9 at 15, 31.  He was last admitted to the United States on

January 20, 1996, on a tourist visa, which authorized him to stay in the country for six

months.  Docket Item 9 at 15.

Hemans worked as a handyman after arriving in the United States. Docket Item 1 at 19. Between 2000 and 2008, he worked in various restaurants. Docket Item 1 at 20. After 2008, he returned to handyman work until he was employed at a Belizean restaurant in 2011. *Id.* Hemans now is married to a United States citizen. *Id.* at 3. He has four children, three of whom are United States citizens. *Id.* The Board of Immigration Appeals ("BIA") has recognized that Hemans "has significant family ties here" and that his "family is likely to experience hardship in the event of his removal."[1] *Id.* at 13.

In 2008, 2009, and 2011, Hemans was convicted of several violations of the New York Vehicle and Traffic Law in Queens County Criminal Court. Docket Item 9 at 16, 18. On February 1, 2010, DHS served Hemans with a Notice to Appear that charged him with being subject to removal from the United States for remaining in the United States longer than permitted. *Id.* at 61-62.

For one of Hemans's convictions, the court sentenced him to thirty days' imprisonment. *Id.* at 18. On April 7, 2011, upon Hemans's release from state custody, DHS took him into federal custody, and Hemans requested a hearing on his custody determination before an immigration judge. *Id.* at 18-19, 66. On April 13, 2011, Hemans was ordered removed "*in absentia*," but that error was corrected about a week later when DHS recognized that he had been in DHS custody at the time of the hearing and an immigration judge reopened his removal proceeding. *Id.* at 94. On June 8,

---

[1] At an immigration proceeding, one of Hemans's daughters testified that Hemans is "a friendly, loving, kind-hearted person." Docket Item 1 at 20. She testified "to the hardship she would experience if her father were deported and she were unable to care for him." *Id.*

2011, the immigration judge ordered Hemans released from custody on a $5,000 bond. *Id.* at 67.

On October 17, 2011, Hemans filed an application to register permanent residence or adjust status along with a visa packet to the United States Citizenship and Immigration Services ("USCIS"). *Id.* at 94.

On September 24, 2012, Hemans married a United States citizen. *Id.* at 19. On October 15, 2012, his spouse filed a Form I-130, Petition for Alien Relative, on his behalf with USCIS. *Id.* at 19, 94. On March 6, 2013, an immigration judge administratively closed Hemans's removal proceeding to give him the opportunity to pursue his I-130 petition. *Id.* at 20, 94. But USCIS denied that petition on February 21, 2014. *Id.* at 20, 94.

On February 10, 2016, Hemans pleaded guilty to one charge of felony assault in the second degree (with intent to cause physical injury to an officer/firefighter/EMT/Nurse) in violation of New York state law. *Id.* at 21, 36. The charge arose from an incident that occurred on September 21, 2014. *Id.* at 33. He was sentenced to 30 months' imprisonment and remanded to state custody at the New York State Department of Corrections and Community Services Ulster Correctional Facility. *Id.* at 21, 37. He began serving his state sentence on April 14, 2016. *Id.* at 37.

On June 16, 2016, DHS revoked the $5,000 bond Hemans had previously posted. *Id.* at 21. On November 10, 2016, upon his release from the Ulster Correctional Facility, Hemans was taken into DHS custody and transferred to the Buffalo Federal Detention Facility. *Id.* at 21-22.

On February 28, 2017, Hemans had a custody hearing before an immigration judge.  *Id.* at 22.  Immigration Judge John B. Reid denied Hemans release on bond.  *Id.* at 82.  Hemans did not appeal that determination.  *Id.* at 22.

On April 18, 2017, Hemans's son, a United States citizen, filed a Form I-130, Petition for Alien Relative, on Hemans's behalf.  *Id.*  That petition was approved on September 15, 2017.  *Id.*

On March 6, 2018, Hemans filed an application to adjust his status.  *Id.*  On May 4, 2018, Immigration Judge Philip J. Montante Jr. denied Hemans's application to adjust his status and ordered him removed.  *Id.* at 23, 53, 84.  On May 31, 2018, Hemans appealed this decision to the BIA.  *Id.* at 23.  The BIA denied his appeal on October 3, 2018, *id.* at 86, and on October 16, 2018, DHS submitted a formal letter to the Embassy of Jamaica asking for a travel document to facilitate Hemans's return.  *Id.* at 87.

On October 22, 2018, Hemans filed a *pro se* petition for review in the United States Court of Appeals for the Second Circuit.  *See Hemans v. Barr*, No. 18-3132 (2d Cir.), Docket Item 1.  He also moved to stay his removal.  *Id.*, Docket Items 9, 16, 17.  Both his petition for review and his motion to stay his removal remain pending.  *See id.*  Even though the Second Circuit has not yet ruled on Hemans's motion for a stay, DHS may not execute his removal because of the forbearance agreement between DHS and the Second Circuit.  Docket item 9 at 25; *see also Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 191 (W.D.N.Y. 2010).

Hemans remains in custody but says that he is "open to supervised electronic monitoring, as a condition of bond."  Docket Item 1 at 10.

**DISCUSSION**

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). The government maintains that Hemans is validly detained under 8 U.S.C. § 1231(a). Docket Item 9-1 at 14-19. Hemans makes three arguments to the contrary. Docket item 1. First, he claims that his detention violates § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See id.* at 9. Second, he argues that "his prolonged detention more than six months violates his right to substantive due process under the Fifth Amendment." *Id.* at 9-10. Third, he argues that "his prolonged detention more than six months without a meaningful review of his detention, in accordance with Federal regulations violates his right to Procedural Due Process under the Fifth Amendment." *Id.* at 10. He also requests a stay of removal for a period of 120 to 180 days pending the resolution of his petition before the Second Circuit. *Id.* at 9.

Because Hemans is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

**I.    STATUTORY BASIS FOR DETENTION**

This Court first considers the statutory basis for Hemans's detention. The government contends that Hemans's detention is governed by 8 U.S.C. § 1231(a). Docket Item 9-1 at 14-18. For the reasons stated in *Sankara v. Whitaker*, 2019 WL 266462, at *4-*5 (W.D.N.Y. Jan. 18, 2019), this Court disagrees. "Section 1231

assumes that the immigrant's removal is both imminent and certain." *Hechavarria v. Sessions*, 891 F.3d 49, 55 (2d Cir. 2018). "The definition of the removal period is dependent upon the assumption that no substantive impediments remain to the immigrant's removal." *Id.* "Because the combined effect of [Hemans's] Second Circuit proceeding and the forbearance agreement creates a substantive impediment to his removal, . . . this Court concludes that . . . the forbearance agreement amounts to a court ordered stay of the removal of the alien," *Sankara*, *supra* at *4 (internal citations ommitted), under 8 U.S.C. § 1231(a)(1)(B).[2] Thus, Hemans's removal period has not begun, and he remains detained under § 1226.

The government argues that "allowing an alien to revert back to detention under 8 U.S.C. § 1226 and obtain bond hearings based solely on the triggering of the forbearance policy would allow aliens to avoid the detention provisions of § 1231, even in cases where there is no likelihood of success on the merits of the petition for review, or worse, where the petition is altogether frivolous." Docket Item 9-1 at 17. But the government's position is inconsistent with the Second Circuit's reasoning in *Hechavarria*. *See* 891 F.3d at 55. And the government's position is plainly incorrect as to § 1226(c): the Supreme Court has concluded that the statute does *not* require criminal aliens detained under that subsection "to be released under any circumstances

_____

[2] The Second Circuit's reasoning in *Hechavarria v. Sessions* supports this Court's resolution of this matter. *See* 891 F.3d 49, 55 (2d Cir. 2018). But because the court in that case "review[ed the alien's] habeas petition after [it] ha[d] issued a stay of removal in his underlying petition for review, [the court did] not decide the contours of judicial review during detention pursuant to the government's forbearance policy in this Circuit." *Id.* at 54 n.3.

other than those expressly recognized by the statute." *Jennings v. Rodriguez*, 138 S.

Ct. 830, 846 (2018).

As for § 1226(a), that statute does require a bond hearing before an immigration

judge to determine whether the alien's detention is necessary while removal

proceedings are pending. *See id.* at 837 ("[T]he Attorney General 'may release' an

alien detained under § 1226(a) 'on bond . . . or conditional parole.'"). But Hemans

already has had his § 1226(a) bond hearing, and § 1226(a) does *not* require "periodic

bond hearings every six months." *Id.* at 847. Furthermore, *Jennings* strongly implies

that § 1226(a) cannot be read to include other significant procedural protections in order

to avoid constitutional concerns. *See id.* at 847-848.

In light of *Jennings*, then, the government's argument lacks merit. The alien

simply will not obtain statutory bond hearings based on avoidance of § 1231 detention.

If anything, the opposite is true. *See Guerrero-Sanchez v. Warden York Cty. Prison*,

905 F.3d 208, 224 (3d Cir. 2018) (quoting *Diouf v. Napolitano*, 634 F.3d 1081, 1092 (9th

Cir. 2011)) (adopting, after *Jennings*, "the Ninth Circuit's limiting construction of

§ 1231(a)(6) that 'an alien facing prolonged detention under that provision is entitled to

a bond hearing before an immigration judge and is entitled to be released from

detention unless the government establishes that the alien poses a risk of flight or a

danger to the community.'"). And because a procedural due process challenge to an

alien's prolonged detention would turn not on which statute governs his detention but

rather on weighing the interests involved and the procedural safeguards, the

government's concern is misplaced.

Because Hemans is not detained under § 1231, this Court rejects his argument that his detention violates 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

If Hemans is not detained under 8 U.S.C. § 1231, the parties dispute whether he is detained under § 1226(a) or § 1226(c). "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings*, 138 S. Ct. at 837 (quoting § 1226(a)). "Section 1226(c), however, carves out a statutory category of aliens who may *not* be released under § 1226(a)." *Id.* (emphasis in original). "Under § 1226(c), the 'Attorney General shall take into custody any alien' who falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Id.* (quoting § 1226(c)(1)).

Hemans believes that he is subject to detention under § 1226(c) because the government identified him "at least [on] eight occasions" as a criminal alien and because he has been convicted of a felony. Docket Item 10-1 at 2-3. But § 1226(c) detention applies only to those aliens who fall into categories *enumerated* in that subsection. In any event, because it is ultimately irrelevant to this Court's conclusions in this matter, because the government asserts that Hemans's detention is properly classified as § 1226(a), Docket Item 9-1 at 21-22, and because, if anything, § 1226(a) classification is more favorable to the *pro se* petitioner, this Court accepts the government's position and finds that Hemans is detained under § 1226(a).

## II.    DUE PROCESS

The Fifth Amendment's Due Process Clause forbids depriving any "person . . . of . . . liberty . . . without due process of law."  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Zadvydas*, 533 U.S. at 690.  "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."  *Plyer v. Doe*, 457 U.S. 202, 210 (1982).  At the same time, however, Congress has "broad power over naturalization and immigration, [permitting it to] make[] rules that would be unacceptable if applied to citizens."  *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action."  *United States v. Salerno*, 481 U.S. 739, 746 (1987).  "So called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty.'"  *Id.* (internal citations omitted).  "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner."  *Id.*  "This requirement has traditionally been referred to as 'procedural' due process."  *Id.*

The Due Process Clause is not offended by mandatory detention of aliens without a hearing for the "*brief period necessary* for . . . removal proceedings."  *Demore* 538 U.S. at 513 (2003) (emphasis added).  In *Demore*, the Court explicitly noted that "in the majority of cases [§ 1226(c) detention] lasts for less than the 90 days . . . considered presumptively valid in *Zadvydas*."  *Id.* at 529.  Diving even deeper, the Court noted that

"in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days." *Id.* And "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the [BIA], appeal takes an average of four months, with a median time that is slightly shorter." *Id.*

### A. Substantive Due Process

Hemans argues that his detention violates his right to substantive due process. Docket Item 1 at 9-10. He has been detained by DHS since November 10, 2016—more than two years and three months. Nevertheless, this Court cannot say that detention that long necessarily violates due process. *See Sanusi v. I.N.S.*, 100 F. App'x 49, 51 (2d Cir. 2004) (summary order) (determining that six-year detention did not violate due process). Indeed, detention under § 1226 may serve the government's compelling interests in both "preser[ving] the government's ability to later carry out its broader responsibilities over immigration matters," *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991), and preventing crime by arrestees that pose a danger to the safety of the community, *see Salerno*, 481 U.S. at 749. What is more, Hemans's detention here has been prolonged primarily by the pending judicial review of his claims. *See Sanusi*, 100 F. App'x at 51. Although there comes a time when the length of an alien's detention pending removal violates due process regardless of the procedural protections afforded, that time has not yet come here. *See Salerno*, 481 U.S. at 747 n.4.

### B. Procedural Due Process

Hemans also challenges the procedural safeguards that apply to his continued detention. Docket Item 1 at 10. "In light of the substantial uncertainty surrounding the

detention provisions" in § 1226, *Hechavarria*, 891 F.3d at 58, this Court has evaluated procedural due process challenges to immigration detention with a two-step inquiry. *See Hechavarria v. Sessions*, 2018 WL 5776421, at *5-*9 (W.D.N.Y. Nov. 2, 2018). As the first step, the Court considers whether the alien's detention has been unreasonably prolonged. *Id.* at *5-*7. If it has not, then there is no procedural due process violation.[3] *See Sankara v. Whitaker*, 2019 WL 266462, at *5 (W.D.N.Y. Jan. 18, 2019). But if it has, the Court proceeds to step two and "identif[ies] . . . the specific dictates of due process" by considering the *Mathews v. Eldridge* factors. 424 U.S. 319, 335 (1976). *See Hechavarria*, 2018 WL 5776421, at *7-*9. If the government has not provided the procedural safeguards dictated by the *Mathews* factors to an alien subject to unreasonably prolonged detention, then his continued detention violates procedural due process. *See id.* at *9.

### 1.    Hemans's Unreasonably Prolonged Detention

"[C]ourts examine each individual's detention circumstance to determine whether it has become 'unreasonable or unjustified.'" *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (quoting *Demore*, 538 U.S. at 532 (Kennedy, J., concurring)). Factors bearing on this question include (1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties;

---

[3] This presumes, however, that the DHS has not "in an arbitrary or categorical manner, . . . den[ied] an alien access to the administrative processes in place to review continued detention." *Zadvydas v. Davis*, 533 U.S. 678, 724 (2001) (Kennedy, J., dissenting). In such a case, "habeas jurisdiction would lie to redress the due process violation caused by the denial of the mandated procedures." *Id.* Hemans asserts that DHS has not complied with federal regulations. *See* Docket Item 1 at 4, 7-8, 10. But nothing in the record indicates that the government has not complied with its regulations in detaining Hemans.

and (4) the likelihood that the removal proceedings will result in a final order of removal. *See Jamal A. v. Whitaker*, 2019 WL 549722, at *3 (D. Minn. Jan. 22, 2019).[4]

First, and most important, courts consider the length of detention. Hemans has been in DHS custody since his release from the Ulster Correctional Facility on November 10, 2017—more than two years and three months, and far longer than the four-month average period contemplated in *Demore*. 538 U.S. at 529. This factor weighs heavily in Hemans's favor. *See also Vallejo v. Decker*, 2018 WL 3738947, at *4 (S.D.N.Y. Aug. 7, 2018) (almost seventeen-month detention since petitioner's *Lora* hearing was "to put it mildly, significant").[5]

Second, courts consider the conditions of detention. But neither party has supplied the Court with any information about the conditions that Hemans faces at the Buffalo Federal Detention Facility. So this Court cannot address that factor.

---

[4]Some courts consider whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable or the time of detention as compared to the potential jail time for the underlying offense. *See, e.g.*, *Cabral v. Decker*, 331 F. Supp. 3d 255, 261-62 (S.D.N.Y. 2018). But this Court agrees with the court in *Muse v. Sessions* that it makes little sense to compare "different types of custody imposed for different reasons by different sovereigns" to determine whether federal immigration detention has become unreasonably prolonged. 2018 WL 4466052, at *3 n.4 (D. Minn. Sept. 18, 2018). *See also Jones v. United States*, 463 U.S. 354, 369 (1983) (holding that "[t]he length of an acquittee's hypothetical criminal sentence . . . is irrelevant to the purposes of his commitment").

Many courts also consider the likely duration of future detention in deciding whether to grant relief. *See Jamal A. v. Whitaker*, 2019 WL 549722, at *3 (D. Minn. Jan. 22, 2019). This Court agrees that the likely duration of future detention may be a consideration as to whether, in exercising its equitable habeas powers, a court should grant relief. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (quoting *Ex parte Royall*, 117 U.S. 241, 251 (1886)) ("a habeas court is 'not bound in every case' to issue the writ"). But there is no reason to consider likely future detention in determining whether a petitioner's detention is unreasonably prolonged.

[5] In fact, it has been about twenty-four months since Hemans's last bond hearing.

Third, courts consider whether either side is responsible for the delay.  The
Second Circuit has indicated that this factor weighs against an immigrant who has
"'substantially prolonged his stay by abusing the processes provided to him,'" but not
"an immigrant who simply made use of the statutorily permitted appeals process."
*Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)).
Here, Hemans's removal proceedings were reopened upon DHS's motion on May 27,
2016, while he was still in state custody.  But it appears that for some reason it took an
immigration judge two years—until May 4, 2018—to order him removed to Jamaica.[6]
On May 22, 2018, Hemans timely appealed that decision to the BIA, which rendered a
decision on October 8, 2018.  Hemans then timely appealed that decision to the Second
Circuit on October 22, 2018.  On these facts, the only delay arguably attributable to
Hemans since he was taken into federal custody in November 2016 are the eighteen
days between the initial decision and his appeal to the BIA in May 2018, and the
fourteen days between the BIA decision and his appeal to the Second Circuit.  So thirty-
two days—about one month of Hemans's twenty-seven-month detention—is attributable
to him.  During the other twenty-six months, Hemans sat in detention awaiting decisions
from the immigration judge, the BIA, and now the Second Circuit.  Therefore, Hemans
does not bear responsibility for the delay, and this factor weighs in his favor.

---

[6] Hemans filed an application to adjust his status with the immigration judge on
March 6, 2018.  Docket Item 9 at 22.  As this Court understands the record, this
application was denied simultaneously with the first order that any immigration judge
issued, on May 4, 2018, ordering Hemans removed to Jamiaca.  *Id.* at 23.  This
excludes the April 13, 2011 order issued, in error *in abstentia*, and therefore
subsequently corrected.  *Id.* at 19.

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal. This Court declines to wade too deeply into the merits of Hemans's claims pending before the Second Circuit; in any event, neither side has included much about the substantive issues in its briefs to this Court.

After weighing all these factors, this Court finds that Hemans's detention has been unreasonably prolonged. Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy, if any, that demands.

### 2.    Nature of Procedural Requirements Due To Hemans

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335, "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake," *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017). Here, that analysis leads to the conclusion that the procedural safeguards addressing Hemans's prolonged detention violate due process because they do not satisfy "the constitutional minimum of fundamental fairness." *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (internal citations omitted). Specifically, the process is insufficient because Hemans has not been offered the opportunity to challenge his detention at a proceeding before a neutral decision maker where the government demonstrates by clear and convincing evidence that his continued detention is necessary to serve a compelling regulatory purpose.

Hemans's interest in his freedom pending his removal—particularly his freedom to be with his family and not confined to a detention facility—deserve great "weight and gravity." *Addington v. Texas*, 441 U.S. 418, 427 (1979). Hemans has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. It is true that "[t]he private interest here is not liberty in the abstract, but liberty *in the United State*s," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original), but Hemans has not conceded his deportability, and the resolution of that issue remains pending before the Second Circuit.

Furthermore, Hemans is married to a United States citizen. Docket Item 1 at 3. He has four children, three of whom are United States citizens. *Id.* Indeed, the BIA has recognized that Hemans "has significant family ties here" and that his "family is likely to experience hardship in the event of his removal." *Id.* at 13. The record thus evidences Heman's interest in being with his immediate family, another interest at the core of liberty. *See Obergefell v. Hodges*, 135 S. Ct. 2584, 2600 (2015) (quoting *Zablocki v. Redhail*, 434 U.S. 374, 384 (1978)) ("The right to marry, establish a home and bring up children is a central part of the liberty protected by the Due Process Clause."); *Ms. L. v. U.S. Immigration and Customs Enforcement*, 310 F. Supp. 3d 1133, 1143 (S.D. Cal. 2018) (family separation as part of immigration enforcement likely to violate due process).

This Court recognizes that the government's interest in detaining Hemans also may be strong. The government contends that Hemans's detention is justified because he presents both a "danger to the community and a flight risk." Docket Item 9-1 at 19.

This Court agrees that both of those interests may well be "legitimate and compelling." *Salerno*, 481 U.S. at 752.

Finally, this Court finds that there is a substantial risk of an erroneous deprivation of Hemans's liberty interests from the procedures used thus far. When the government seeks to detain a person to achieve a regulatory purpose, due process requires the government to demonstrate by clear and convincing evidence that detention necessarily serves a compelling interest. *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33. *See also Santosky*, 455 U.S. at 756 (quoting *Addington*, 441 U.S. at 424) ("clear and convincing evidence" standard applies 'when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money'"). "That standard applies equally here." *See Hechavarria v. Sessions*, 2018 WL 5776421, at *8 (and cases cited therein). To sustain the prolonged detention of an alien subject to removal proceedings based on its interest in preventing crime by arrestees, the "[g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person,'" *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or ensure that the alien will appear for any future proceeding.[7] This requires

---

[7] An argument can be made that the Due Process Clause does not require the clear-and-convincing-evidence standard for flight risk determinations, but instead that the government may demonstrate flight risk by a preponderance of the evidence; after all, that is the standard traditionally applied to flight-risk determinations for pretrial detention. But as the Supreme Court has noted, when the preponderance of the evidence standard is used in the pretrial detention context, "the arrestee is entitled to a prompt detention hearing . . . and the maximum length of pretrial detention is limited by the stringent time limitations of the Speedy Trial Act." *United States v. Salerno*, 481 U.S. 739, 747 (1987). Here, there are no such speedy-trial limitations and no statutory

consideration of less restrictive alternatives to detention. *See Hechavarria v. Whitaker*, 2019 WL 233887, at *10-*11 (W.D.N.Y. Jan. 16, 2019); *Hechavarria v. Sessions*, 2018 WL 5776421, at *9 n.13.

Turning to the procedures used thus far in this case, Hemans *did* receive an individualized custody hearing before an immigration judge on February 28, 2017. Docket Item 9 at 22, 82. According to the government, the immigration judge declined to release Hemans because he found that Hemans was both a danger to the community and a flight risk.[8] Docket Items 9 at 22 and 9-1 at 6. At the § 1226(a) hearing, the burden of proof presumably was on Hemans to demonstrate to the "satisfaction of the officer that [his] release would not pose a danger to property or persons, and that [he] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). On the current record, such a hearing did not provide Hemans with enough process for two reasons.

---

entitlement to a detention hearing in which the government bears *any* burden of proof. In any event, despite the discrepancy between risk-of-flight and dangerousness burdens in the pretrial detention context, the Second Circuit in *Lora v. Shanahan* did not distinguish between those burdens in the immigration detention context. 804 F.3d 601, 616 (2d Cir. 2015), *vacated*, 138 S. Ct. 1260 (2018). Additionally, even after *Jennings*, courts have continued to hold the government to the clear-and-convincing-evidence standard as to both risk of flight and dangerousness once immigration detention has been prolonged. *See, e.g., De Ming Wang v. Brophy*, 2019 WL 112346, at *3 (W.D.N.Y. Jan. 4, 2019); *Darko v. Sessions*, 342 F. Supp. 3d 429, 436 (S.D.N.Y. 2018); *Martinez v. Decker*, 2018 WL 5023946, at *5 (S.D.N.Y. Oct. 17, 2018).

[8] The government relies on a declaration by Robert F. Morris, a Deportation Officer with DHS, for the fact that the immigration judge concluded that Hemans was a danger to the community and a flight risk. Docket Items 9 at 14, 22 and 9-1 at 6. Morris's declaration is based on a review of DHS files relating to Hemans. Docket Item 9 at 14-15. The government included those files as a part of the record, but this Court cannot decipher what the immigration judge wrote in his handwriting on his order with respect to Hemans's custody. *Id.* at 82.

First, although he received a hearing about three months into his detention, Hemans now has been detained for two more years without any reconsideration of that decision by a neutral decision maker. Even if Hemans presented a danger to the community or a flight risk in 2017, he may no longer present the same danger or risk now. Indeed, at least one court in this circuit has concluded that an alien was constitutionally entitled to a second individualized bond hearing when seventeen months had passed since the alien's first *Lora* bond hearing. *See Vallejo*, *supra* at *6. *See also Jones v. United States*, 463 U.S. 354, 368 (1983) ("The committed acquittee is entitled to release when he . . . is no longer dangerous").

Second, it does not appear that Hemans's first hearing was a proceeding in which DHS bore the burden of proof by clear and convincing evidence or where a neutral decision maker even considered plausible, less restrictive alternatives to detention. As this Court has explained, after an alien's detention has become unreasonably prolonged, "a 'typical' § 1226(a) bond hearing[]—where *he* must prove '*to the satisfaction of the immigration judge*' that he 'does not present a danger' before the immigration judge could even consider whether conditions of supervision might suffice to protect the public—is no longer constitutionally adequate." *Hechavarria v. Whitaker*, 2019 WL 233887, at *7 (quoting 8 C.F.R. § 1236.1(c)(8)).

Because Hemans's detention has been unreasonably prolonged, and because § 1226(a) does not require the government to demonstrate by clear and convincing evidence that his detention necessarily serves a compelling regulatory purpose, the statute is unconstitutional as applied to him. His continued detention violates the Due Process Clause. Hemans therefore must be released unless, no later than fourteen

days from the date of this decision, the government demonstrates by clear and convincing evidence before a neutral decision maker that Hemans's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or protecting others or the community.  The decision maker must consider—and must address in any decision—whether there is clear and convincing evidence that no less restrictive alternative to physical detention, including release on bond in an amount the petitioner can reasonably afford, with or without conditions, would also reasonably address those purposes.  *See Hechavarria v. Whitaker*, 2019 WL 233887, at *10; *Hechavarria v. Sessions*, 2018 WL 5776421, at *8-*9.  Because Hemans has expressly indicated to this Court that he "is open to supervised electronic monitoring, as a condition of bond," Docket Item 1 at 10, the decision maker must expressly consider whether there is clear and convincing evidence that this plausible, less restrictive alternative to detention would not reasonably serve the government's interests in lieu of detention.

## III.    FUTILITY OF EXHAUSTION OF ADMINISTRATIVE REMEDIES

The government argues that if this Court concludes that Hemans is detained under 8 U.S.C. § 1226(a), he should be required to exhaust his administrative remedies before obtaining habeas relief.  Docket Item 9-1 at 22.  Specifically, it argues that Hemans must exhaust the requirements available in 8 C.F.R. § 1003.19(e), the regulation that governs custody and bond redeterminations.  If an alien requests a second bond hearing under that regulation, he must petition an immigration judge and show that his "circumstances have changed materially since the prior" hearing.  *Id.* § 1003.19(e).

The government cites *Joseph v. Decker*, 2018 WL 6075067, at *6 (S.D.N.Y. Nov. 21, 2018) in support of its claim. Docket Item 9-1 at 22-23. But in *Joseph*, the court determined that "exhaustion is excused here because any administrative appeal would have been futile and unable to address [the alien's] substantial constitutional claims." *Joseph*, *supra* at *6. This Court agrees. As this Court has explained, in "a 'typical' § 1226(a) bond hearing, [*the alien*] must prove '*to the satisfaction of the immigration judge*' that he 'does not present a danger' before the immigration judge could even consider whether conditions of supervision might suffice to protect the public." *Hechavarria v. Whitaker*, *supra* at *7 (emphasis in original) (quoting 8 C.F.R. § 1236.1(c)(8)). Neither the immigration judge nor the BIA have jurisdiction to adjudicate the constitutionality of that burden. *See id.* So giving Hemans a "typical" § 1226(a) bond hearing would not remedy the due process violation, and requiring him to seek another hearing before an immigration judge therefore would be futile.

## IV.  REQUEST TO STAY REMOVAL

Hemans has asked this Court to stay his removal for a period of 120 to 180 days pending resolution of his claim before the Second Circuit. Docket Item 1 at 9. The Real ID Act of 2005, 8 U.S.C. § 1252, strips district courts of jurisdiction to review a final order of deportation. *See De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 615-16 (2d Cir. 2007). "[B]ecause district courts have no jurisdiction to review final orders of removal, they have no jurisdiction to review requests for stays of removal." *Al-Garidi v.*

*Holder*, 2009 WL 1439216, at *1 (W.D.N.Y. May 15, 2009).  As it lacks jurisdiction, this Court denies Hemans's request to stay his removal.[9]

## CONCLUSION

For the reasons stated above, Hemans's petition is conditionally GRANTED. **Within fourteen calendar days of the date of this Decision and Order**, the government must release Hemans from detention unless a neutral decision maker conducts an individualized hearing to determine whether his continued detention is justified.  At any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Hemans's continued detention is necessary to serve a compelling regulatory purpose, such as protecting against danger to the community or risk of flight.  Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less restrictive alternative to detention would also address the government's interests.  In other words, the decision maker must find that no condition or combination of conditions of release can reasonably assure Hemans's appearance and the safety of the community or any persons—that is, even with conditions, Hemans presents an identified and articulable risk of flight or threat to an individual or the community.  The decision maker must expressly determine whether the government provides clear and convincing evidence demonstrating that supervised

_____

[9] 28 U.S.C. § 1631 permits this Court to transfer Scott's deportation-related claims to the United States Court of Appeals for the Second Circuit, where jurisdiction may be proper, if the transfer is in the interests of justice. See *De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 617-18 (2d Cir. 2007). Here, however, Hemans has already filed a motion to stay his removal in the Second Circuit.  *Hemans v. Barr*, No. 18-3132 (2d Cir.), Docket Items 9, 16, and 17.

electronic monitoring as a condition of bond would not reasonably serve the

government's interest.  Hemans's request to stay his removal is DENIED.

SO ORDERED.

Dated:      February 27, 2019
                Buffalo, New York


  *s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE